Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1315 | **DATE** | 12/4/2001 |
| **CASE TITLE** | Ellen Gibb vs. Abbott Laboratories, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: Defendant's motion to dismiss [6-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 05 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | DEC 05 2001 | |
| TSA | courtroom deputy's initials | DEC -4 PM 4:26 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLEN GIBBS, | ) |
| Plaintiff, | ) ) ) ) Case No. 01 C 1315 |
| v. | ) ) Judge Wayne R. Andersen |
| ABBOTT LABORATORIES, INC., | ) ) ) |
| Defendant. | ) |

DEC 0 5 2001

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the defendant Abbott Laboratories' motion to dismiss Counts IV, V, and VI of the plaintiff's complaint for failure to state of claim upon which relief can be granted or alternatively because Count VI fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). For the following reasons, the defendant's motion is granted.

## BACKGROUND

The following factual background is taken from the civil complaint filed in this Court, which, for purposes of this opinion, we assume to be true. Plaintiff Ellen Gibbs is 29-year old woman who currently resides in the state of Georgia. On or about July 1999, Gibbs was given a pregnancy test as part of a routine pre-operative examination prior to a minor gynecological procedure. The test that was administered to Gibbs was manufactured and distributed by defendant Abbott Laboratories, Inc. ("Abbott"). Generally, the test kits manufactured by Abbott are used as a diagnostic tool to detect the presence of a hormone called human chorionic gonadotropin (hCG). Doctors test women for pregnancy by ordering an analysis of their hCG levels. If a patient is pregnant, hCG levels should be elevated, remain elevated and increase during the pregnancy. However, an elevated hCG level

in the absence of any other sign of pregnancy is an indicator of potentially very serious conditions, including ectopic pregnancy or a deadly form of cancer called trophoblastic disease. The normal course of treatment for trophoblastic disease is a vigorous regimen of chemotherapy.

When Gibbs was given the pregnancy test manufactured by Abbott in July 1999, it generated a positive result. However, her doctors determined that despite the elevated hCG levels, she was not actually pregnant. Gibbs' doctor continued to administer hCG tests and each of them indicated that her levels remained high. Her doctor suspected that Gibbs was having an ectopic pregnancy. As a result, a regimen of methotrexate, a form of chemotherapy, was initiated to which the plaintiff did not respond positively. Additionally, the medicine failed to reduce Gibbs' hCG levels and the doctors were forced to assume she was unresponsive to the treatment. Subsequently, Gibbs was referred to a gynecologic oncologist who diagnosed the plaintiff's condition as gestational trophoblast disease. Extensive diagnostic tests were then performed on Gibbs, including CT scans of the chest, pelvis, and abdomen. All of these examinations were negative to the presence of cancer in her body. Consequently, another gynecologic oncologist was consulted and he concluded that Gibbs most likely had a "chorio cancer" of the uterus. At that point, Gibbs considered having a hysterectomy to remove the cancer from her body but instead she chose to begin treatment with EMACO, a very potent form of chemotherapy.

In October 2000, Gibbs was referred to Laurence Cole, Ph.D. who requested that she submit urine and blood samples for analysis. Dr. Cole concluded that Gibbs' positive hCG results were false and that, in fact, she did not have cancer. Gibbs' chemotherapy and other cancer related treatments were discontinued shortly thereafter. According to her complaint, Gibbs now faces a

substantially increased risk of contracting leukemia and other serious diseases as a result of the allegedly unnecessary chemotherapy treatments.

On February 27, 2001, Gibbs filed the instant eight count complaint against Abbott. The gist of the plaintiff's complaint is that, as a direct result of Abbott's allegedly defective test kits, all of the plaintiff's diagnoses of ectopic pregnancy and trophoblast disease were false and her painful chemotherapy treatments were unnecessary. Specifically, Gibbs has alleged claims of strict liability, negligence, failure to warn, breach of implied warranty, breach of implied warranty of fitness for a particular purpose, violation of the Georgia Fair Business Practices Act, and intentional or negligent infliction of emotional distress.

## DISCUSSION

In considering defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations set forth in the complaint and draw all reasonable inferences in favor of Gibbs. *See Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). A motion to dismiss, pursuant to Rule 12(b)(6), will only be granted if it appears that Gibbs could not prove any set of facts in support of her claims entitling her to relief. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In Count IV and V, Gibbs alleges that Abbott breached both an implied warranty that the test kits were fit and safe for their intended or expected use and an implied warranty of fitness for the particular purpose for which the test kits were to be used. The defendant has attacked these counts by asserting that Gibbs has not established privity between herself and Abbott. As for Count VI, Gibbs contends that Abbott engaged in misrepresentations and/or omissions of material fact

3

regarding the accuracy and reliability of the hCG test kits it manufactured and distributed. Additionally, Gibbs alleges that Abbott did not disclose to the medical community information it possessed concerning an available commercial fix which would have eliminated the possibility of false positive hCG levels reported by the Abbott test kits. All of these actions are allegedly violations of the Georgia Fair Business Practices Act (the "GFBPA"), Ga Code Ann. § 10-1-390, *et seq.* Abbott attacks Count VI on three fronts. First, Abbott argues that Gibbs failed to comply with GFBPA's notice requirement. Second, Abbott asserts that Gibbs did not allege that it offered its test kits to the general public. Finally, Abbott contends that Gibbs has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

## I. Implied Warranty

Abbott argues that Counts IV and V of Gibbs' complaint must be dismissed because Georgia law allows implied warranty claims only if there is privity between the seller and the complaining party. *See, e.g., Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558 (Ga. 1996); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373 (Ga. 1975); *see also Bodymasters Sports Indus., Inc. v. Wimberley*, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998) (affirming dismissal of claim for implied warranty of fitness for particular purpose in products liability case because plaintiff was not in privity with defendant); *Cobb County Sch. Dist. v. MAT Factory, Inc.*, 452 S.E.2d 140, 145-46 (Ga. Ct. App. 1994) (affirming dismissal of claim for implied warranty of merchantability because plaintiff was not in privity with defendant). Gibbs has conceded in her briefs that she was not in privity with Abbott in that she never personally purchased a test kit from Abbott. Accordingly, as both parties are in agreement on this point, we will dismiss Counts IV and V of the plaintiff's complaint.

4

## II. The Georgia Fair Business Practices Act

The GFBPA makes it unlawful for any person to engage in "[u]nfair or deceptive acts or practices in trade or commerce." Ga. Code Ann. § 10-1-393(a). The statute is designed "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state" of Georgia. Ga. Code Ann. § 10-1-391. Further, the GFBPA also includes a significant provision which states that "[a]t *least 30 days prior to the filing of any such action*, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, *shall* be delivered to any prospective respondent." Ga. Code Ann. § 10-1-399(b) (emphasis added); *see also Zeeman v. Black*, 273 S.E.2d 910, 916 (Ga. Ct. App. 1980). It is undisputed that Gibbs failed to provide written notice to Abbott at least thirty days prior to the filing of her complaint on February 27, 2001. The question thus remains what is the legal effect of Gibbs' failure to satisfy this statutory pre-filing requirement.

The defendant argues that Gibbs' failure to comply with § 10-1-399(b) "dooms" Count VI and, as a result, it must be dismissed for failure to state claim upon which relief may be granted. On the other hand, Gibbs contends that Abbott has been constructively notified of the impending GFBPA claim, and, if the Court rejects that argument, then Gibbs seeks leave to amend her complaint. We agree with the defendant that the plaintiff's failure to provide written notice concerning "the unfair or deceptive act relied upon" by Gibbs at least thirty days prior to the filing of her complaint is fatal to Count VI.

Numerous courts interpreting the notice requirement of the GFBPA have dismissed claims under the statute when plaintiffs have failed to comply with this statutory requirement. *See, e.g.*

5

*Sharpe v. General Motors Corp.*, 401 S.E.2d 328, 330 (Ga. Ct. App. 1991) (court granted summary judgment as to violations of the GFBPA for which no notice was ever given); *Sweeney v. Athens Regional Med. Ctr.*, 709 F. Supp. 1563, 1583 n.14 (noting that an additional reason to dismiss plaintiff's complaint was her failure to notify the defendant of her GFBPA claims pursuant to "the statutory requirement for bringing an action under the [G]FBPA").

We find one case interpreting the statutory pre-filing notice requirement to be particularly persuasive. In *Brown Realty Assoc., Inc. v. Thomas*, 389 S.E.2d 505 (Ga. Ct. App. 1989), the trial court denied the defendant's motion for a directed verdict at the close of the plaintiff's evidence on a GFBPA claim. Thereafter, the jury returned a verdict against the defendant on the GFBPA count. On appeal, the defendant argued that a directed verdict should have been entered because the plaintiff failed to produce evidence of the delivery of the notice required by § 10-1-399(b). The court reversed the jury verdict in favor of the plaintiff on the GFBPA count because her "right to recover under the Act was foreclosed by [her] failure to introduce evidence that [she] had delivered a written demand for relief to the [defendants] at least 30 days prior to filing suit, as required by OCGA § 10-1-399(b)." *Id.* at 510 (quoting *Tilley v. Page*, 181 Ga.App. 98, 99, 351 S.E.2d 464 (1986)). If the court in *Thomas* felt compelled to overturn a jury verdict because the plaintiff did not provide the requisite pre-filing notice, this Court must follow suit on the instant motion to dismiss. We do not consider the § 10-1-399(b) notice requirement to be trivial, and Gibbs' failure to satisfy it mandates a dismissal of the count with prejudice absent some evidence that the defect can be corrected if we grant her leave to amend her complaint.

Gibbs responds to the above arguments by asserting that Abbott has been given constructive notice of the GFBPA count as a result of other pending litigation in this Court, and, alternatively,

6

that she should be granted leave to amend her complaint to address any deficiency in notice to the defendant. We find each of these arguments to be unpersuasive. As to the first argument, Gibbs has offered no legal authority to support her position that constructive notice is recognized under the GFBPA. In fact, our analysis of the available precedents indicates that the opposite is in fact true. While there is no dispute that Abbott has been put on notice that it will be required to defend against numerous state law allegations of consumer fraud, Georgia is relatively unique in that it requires a plaintiff to give specific notice to a defendant that it will be forced to defend against a Georgia FBPA count. Accordingly, we can not accept the plaintiff's argument that Abbott was constructively notified of the impending GFBPA count.

Since we have rejected Gibbs' constructive notice argument, she next requests that this Court grant her leave to amend her complaint to comply with § 10-1-399(b). While Gibbs is correct that leave to amend one's complaint is to be freely given pursuant to Federal Rule of Civil Procedure 15(a), we are at a loss as to how that could possibly benefit her in this case. Absent her decision to pursue a Rule 41 voluntary dismissal, it would be impossible for the plaintiff to cure this statutory defect in her complaint. We acknowledge that Gibbs sent a written notice on June 14, 2001 (see Exhibit 1 to plaintiff's brief) informing Abbott of her intention to pursue a GFBPA claim. However, even if we did grant her leave to amend her complaint, she would not be able to retroactively apply the June 14 notice letter to her February 27 complaint under Rule 15(c). Accordingly, the June 14 letter is simply too late. Therefore, the plaintiff has failed to satisfy the statutory pre-filing notice requirement of the GFBPA and Count VI is hereby dismissed. Because we dismiss the count on this basis, there is no need to address the defendant's other attacks on Count VI.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Counts IV, V, and VI of the plaintiff's complaint for failure to state a claim upon which relief can be granted is granted. The remaining counts of the plaintiff's complaint remain viable.

It is so ordered.

                                                Wayne R. Andersen
                                                United States District Judge

Dated: December 4, 2001